NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0763n.06

No. 12-3349

## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JOHN J. RUGALA,

     Defendant-Appellant.

**FILED**
*Aug 16, 2013*
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

Before:     CLAY, COOK, and ROTH,[*] Circuit Judges.

JANE R. ROTH, Circuit Judge.

In this sentencing appeal, John Rugala challenges the district court's application of a two-level enhancement to his base offense level for obstruction of justice under § 3C1.1 of the United States Sentencing Guidelines. For the reasons that follow, we affirm the sentence imposed by the district court.

## I. Background

John Rugala was convicted of one count of bank fraud, in violation of 18 U.S.C. § 1344, on November 21, 2011. Rugala had been a car dealer in the Cleveland, Ohio, area, where he owned John Rugala Chevrolet and was a co-owner of Rugala Stanton Motors. By late 2000, John Rugala Chevrolet was experiencing financial problems. In response to this, Rugala and others began engaging in a check-kiting scheme whereby they wrote checks back and forth

---

[*] The Honorable Jane R. Roth, Senior Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

between the two car dealerships. This allowed them to create short-term loans for the dealerships by taking advantage of their banks' practice of allowing customers to draw upon checks once they were deposited, even though it took several days for the checks to clear. This scheme ultimately caused a loss of approximately $1.2 million to the banks involved.

Most pertinent to this appeal, Rugala learned on January 25, 2001, that John Rugala Chevrolet faced a cash shortfall, but on that same day he signed 51 checks totaling over $1 million from John Rugala Chevrolet's account to Rugala Stanton Motors. He signed another 49 checks for over $1 million to Rugala Stanton Motors the next day.

Rugala testified in his own defense. At the end of his direct examination, with respect to the checks written in January 2001, Rugala said "I thought they were backed by actual money." On cross-examination, however, Rugala testified that he knew John Rugala Chevrolet was short on cash on January 25, 2001, when he began writing checks to Rugala Stanton Motors. He also testified that John Rugala Chevrolet's office manager told him the dealership was short on cash because they were waiting to receive approximately $500,000 worth of financing for used vehicles, $100,000 from outstanding contracts, and monies that would be coming in from regular business. On re-direct, Rugala further testified that the office manager indicated to him that money would be coming in from "[financing] of cars, contracts that were going to be cashed from the sale of vehicles, and parts, maybe an open account statement."

At sentencing, the government sought a two-level enhancement to Rugala's base offense level for obstruction of justice under § 3C1.1 of the Sentencing Guidelines. The government pointed to the statements, described above, that Rugala made on direct examination and cross-examination to argue that Rugala committed perjury while testifying. After argument on this issue, the district court made the following ruling:

> Based upon the testimony specifically now cited by the government as to Mr. Rugala's testimony indicating that he only signed – well, he signed checks and he believed that there was always money in the account to cover, that he never signed a check when he didn't believe there was money in the account to cover, juxtaposed with the cited testimony on cross-examination, the Court does find that there was perjurious testimony and will apply the two-level enhancement for obstruction.

The district court sentenced Rugala to 37 months imprisonment on March 14, 2012. Rugala appealed.

## II. Analysis[1]

Rugala argues that the district court erred by imposing the two-level enhancement for obstruction of justice under § 3C1.1 of the Sentencing Guidelines. We review the district court's findings of fact with respect to the obstruction of justice enhancement for clear error, but we review its determination of whether the facts constitute obstruction, and its application of the enhancement, de novo. *United States v. Watkins*, 691 F.3d 841, 851 (6th Cir. 2012).

Section 3C1.1 of the Sentencing Guidelines mandates a two-level increase to a defendant's offense level when he "willfully obstructed or impeded . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the . . . offense of conviction." U.S. Sentencing Guidelines § 3C1.1. Application Note 4 contains a non-exhaustive list of conduct to which the enhancement applies, including "committing, suborning, or attempting to suborn perjury." *Id.* at cmt. n. 4; *see United States v. Dunnigan*, 507 U.S. 87, 98 (1993).

In order to properly apply a § 3C1.1 enhancement for obstruction of justice, "the court must 1) identify those particular portions of defendant's testimony that it considers to be

---

[1] The district court had jurisdiction pursuant to 18 U.S.C. § 3231, and this court has jurisdiction pursuant to 18 U.S.C. § 3742(a).

perjurious; and 2) either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Boring*, 557 F.3d 707, 712 (6th Cir. 2009) (internal quotation marks omitted); *see United States v. Kennedy*, 714 F.3d 951, 961-62 (6th Cir. 2013). The elements of perjury are "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Kennedy*, 714 F.3d at 962 (quoting *Boring*, 557 F.3d at 712).

Rugala argues that the district court's finding that Rugala lied by testifying that he thought the checks he wrote were "backed by actual money" was clearly erroneous. "A finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Gilpatrick*, 548 F.3d 479, 484-85 (6th Cir. 2008) (quoting *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985)). Based on our review of the testimony at trial, we cannot conclude that the district court's finding that Rugala testified falsely was clearly erroneous. Rugala admitted that he knew John Rugala Chevrolet's account faced a cash shortfall when he wrote over $2 million worth of checks drawing from that account. This clearly contradicts Rugala's statement that he believed these checks were backed by actual money.

Rugala argues that the phrase "backed by actual money" was used at trial to also mean that an expected inflow of money would cover a check such that there would be money in the account at the time the check was presented. Under this meaning, Rugala argues, he did not lie because he did expect an inflow of money into John Rugala Chevrolet's account before the checks to Rugala Stanton Motors were cashed. Even attributing this meaning to the phrase "backed by actual money," we cannot conclude that the district court clearly erred in finding that

Rugala testified falsely. Rugala testified on cross-examination that he believed $500,000 worth of financing, $100,00 worth of outstanding contracts, and regular business would be coming into John Rugala Chevrolet's account. This, too, contradicts Rugala's statement the he believed the checks were "backed by actual money" because he signed checks for over $2 million and knew John Rugala Chevrolet's account was already short on cash. Therefore, the district court's finding that Rugala testified falsely was not clearly erroneous.

Because the district court's factual findings were not clearly erroneous, the district court did not err by applying the obstruction of justice enhancement in § 3C1.1 to determine Rugala's sentence.

## III. Conclusion

For the foregoing reasons, we affirm the district court's judgment of sentence.